NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANET ROSS,<br><br>   *Plaintiff*,<br><br> v.<br><br>YOUTH CONSULTATION SERVICE, INC.,<br><br>   *Defendant*. | Civil No. 2:14-2229 (KSH) (CLW)<br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

  In these cross motions for summary judgment, the Court must decide whether defendant, Youth Consultation Services (YCS), violated the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, by interfering with plaintiff Janet Ross's rights under the statute. YCS terminated her for not returning to work after she exhausted her 12 weeks' FMLA leave. Ross alleges that YCS failed to provide proper FMLA notice and that as a result, she had insufficient information to structure her leave.

 **I.** **Background**

  Janet Ross worked as a licensed practical nurse at YCS for approximately seven and one-half years before taking a medical leave of absence in the fall of 2012. (D.E. 30-2 ("Ross Statement of Material Facts") ¶ 1); D.E. 40-4 ("YCS Statement of Material Facts") ¶ 2.) Just prior to that, she had completed a three-day disciplinary suspension between September 25 and September 28, 2012. (D.E. 39-4 Ex. B ("Ross Deposition") T30:4-15; YCS Statement of Material Fact ¶ 8.) While she was out on suspension, Ross visited her physician, who gave her a medical note, which her co-worker Jennifer Wade delivered. (Ross Statement of Material Facts

1

¶ 11; YCS Statement of Material Facts ¶ 11.)  The note supported Ross's request for time off until October 8th because of her hip dysplasia, which she had suffered for "ten to fifteen years." (Ross Deposition T32:5-7; Ross Statement of Material Facts ¶ 3.)[1]  Wade delivered another doctor's note to YCS for Ross before October 8th asking for additional time off from October 9 to October 23, 2012.  (Ross Statement of Material Facts ¶ 12; YCS Statement of Material Facts ¶ 13.)

On October 9, 2012 -- four days after receiving the second medical note -- YCS Benefits Manager, Sydney Williams, sent Ross a packet containing information about FMLA leave benefits and several forms: a "Family/Medical Leave Request Form"; a "Leave Designation/Employee Acknowledgment of Obligations Form"; and a "Certification of Health Care Provider Form." (Ross Statement of Material Facts ¶ 20; YCS Statement of Material Facts ¶ 14.)  On the first form, Ross checked the box requesting consecutive medical leave, writing "10/1/12" as the beginning date of the medical leave request and putting "unknown" as the end date.  (D.E. 39-5 Ross Ex. M.)  She signed and dated the request form on October 11, 2012. (*Id.*)

The designation form, which had been partially filled out by Sydney Williams, indicated that Ross was eligible for up to 12 weeks' FMLA leave; that her job would be protected during FMLA leave; and that she had requested an October 1, 2012 start date and an "unknown" end date.  (D.E. 39-5 Ross Ex. N.)  In its last paragraph, this form stated:

> While on leave, you must furnish us with reports every 30 days of your status and intent to return to work.  Note: Failure to return to work on the applicable return date may result in the termination of employment/you being considered to have voluntarily resigned.

---

[1] The Court notes that defendant disputes this fact because it is without sufficient information to verify Ross's medical history, and accordingly relies on Ross's assertions in her deposition.

2

Ross signed and dated the form. (*Id.*) Ross's doctor filled out the Certification of Health Care Provider form on October 15, 2012, indicating that Ross suffered from a serious condition and that she could not work intermittently during her medical leave. (*Id.*) (D.E. 39-5 Ross Ex. O.) Several boxes remained unchecked, including whether Ross could perform some functions of the job or work part-time. (*Id.*) The physician's form also indicated an "undetermined" end date. (*Id.*) Ross read and signed the forms. (Ross Deposition T51:1-17).

Less than two weeks after Ross sent her packet back to Williams, her physician provided a note that stated Ross was "unable to work at this time and has been scheduled for a Right Total Hip Arthroplasty on 11/19/12 and a Left Total Hip Arthroplasty on 1/21/13." (D.E. 39-6 Ross Ex. R.) The physician also estimated her return-to-work date to be April 21, 2013. (*Id.*) Neither Williams nor any other YCS employee contacted Ross after getting this communication, which was received no later than October 26, 2012. (Ross Deposition T59:11-19.) The next contact Ross had with YCS was on December 31, 2012, when Williams called her and asked if her return date had changed. (Ross Deposition T59:17-25 to T60:1-17). Ross replied that it had not and that she was unable to return to work before April, as instructed by her doctor. (*Id.*)

Williams followed up their conversation with a letter dated the same day that said:

> As you know, you have been unable to work since October 1, 2012 due to disability and you[r] leave time under the Family and Medical Leave Act ("FMLA") exhausted on December 21, 2012. Based on a medical note dated October 19, 2012, your physician advised that you were unable to return to work until April 21, 2013. Per our conversation today, you confirmed that there have been no changes in your return to work date.
> Unfortunately, YCS is not able to hold your position open indefinitely. As a result, your employment will be terminated as of January 4, 2013. Nevertheless, if and when you believe your situation changes, you may apply for any open position for which you are qualified. Please do not hesitate to contact me with any questions or concerns[.]

(D.E. 39-6 Ross Ex. S.)

Ross did undergo both hip surgeries as scheduled on November 19, 2012 and January 21, 2013. (T53:10-15.)

On April 8, 2014, Ross filed this lawsuit against YCS, alleging violations of the FMLA (count one) and the New Jersey Law Against Discrimination *N.J.S.A.* 10:5-1 to -49 (count two). (D.E. 1 ("Amended Complaint") ¶ ¶ 25-34, 35-42.)  In these motions, Ross seeks summary judgment on the FMLA count and YCS has moved for summary judgment in the entirety.  (D.E. 39 and D.E 40.)

## II.  FMLA

Congress passed the FMLA in 1993, intending to "balance the demands of the workplace with the needs of families" by allowing employees to take medical leave while guaranteeing job protection.  Pub. L 103-3, § 2, Feb. 5, 1993, 107 Stat. 6 (codified in 29 U.S.C. § 2601(b)(1), (2)).  An eligible employee is entitled to 12 work weeks' unpaid leave every 12 months, so long as she, or a close family member, has a qualifying medical condition.  29 U.S.C. § 2612(a)(1)(A)-(D).  Elaborating on the eligibility requirements is unnecessary here because there is no dispute that Ross was entitled to 12 weeks of unpaid leave and that she had a qualifying medical condition.

The FMLA requires an employer to provide three essential notifications to employees: (1) eligibility notice, (2) rights and responsibilities notice, and (3) designation notice.[2]

*Eligibility Notice*

---

[2] The FMLA regulations also require an employer to give general notice to employees of their rights, and ability to enforce those rights.  Such notice includes conspicuously posting the information on the premises for employees to read and including it in written handbooks or guidelines for eligible employees to read.  C.F.R. § 825.300(a)(1).

Within five business days of an employee requesting FMLA leave, or when an employer is on notice of an employee's potentially-FMLA-qualifying condition, it "must notify the employee of the employee's eligibility to take FMLA." C.F.R. § 825.300(b)(1) (2016)

*Rights and Responsibilities Notice*

Along with the eligibility notice, employers must also provide "written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." C.F.R. § 825.300(c)(1). The notification may, but is not required to, include other information such as "whether the employer will require periodic reports of the employee's status and intent to return to work." C.F.R. § 825.300(c)(1)(2)

*Designation Notice*

The employer must designate leave "as FMLA–qualifying" and give notice "of the designation to the employee." C.F.R. § 825.300(d)(1). When the employer knows the leave is for an FMLA–qualifying reason, "the employer must notify the employee whether the leave will be designated and will be counted as FMLA leave within five business days absent extenuating circumstances." C.F.R. § 825.300(d)(1). "If the information provided by the employer to the employee in the designation notice changes (e.g., the employee exhausts the FMLA leave entitlement), the employer shall provide, within five business days of receipt of the employee's first notice of need for leave subsequent to any change, written notice of the change." C.F.R. § 825.300(d)(5).

Further, the employer

> must notify the employee of the amount of leave counted against the employee's FMLA leave entitlement. If the amount of leave needed is known at the time the employer designates the leave as FMLA–qualifying, the employer must notify the employee of the number of hours, days, or weeks that will be counted against the employee's FMLA leave entitlement in the designation notice. If it is not

5

>possible to provide the hours, days, or weeks that will be counted against the employee's FMLA leave entitlement (such as in the case of unforeseeable intermittent leave), then the employer must provide notice of the amount of leave counted against the employee's FMLA leave entitlement upon the request by the employee, but no more often than once in a 30–day period and only if leave was taken in that period.  C.F.R. § 825.300(d)(6).

In short, employees are entitled to protections under the FMLA and employers must make them aware of such protections so they can meaningfully choose to exercise their FMLA rights.  Under the FMLA, an employer shall not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" included in the FMLA.  29 U.S.C. § 2615 (a)(1).  "An employer may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered." *Id.*

### III.  Standard of Review

Under Federal Rule of Procedure 56, "[s]ummary judgment is appropriate when the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is material and genuine if it "affects the outcome of the suit under the governing law and could lead a reasonable jury to return a verdict in favor of the nonmoving party."  *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (quotation and alteration marks omitted).  The familiar standard places on the party seeking summary judgment "the burden of demonstrating that the evidentiary record presents no genuine issue of material fact."  *Id.*

### IV.  Discussion

#### A.  FMLA (count one)

Ross argues that YCS never gave her proper FMLA notice; if it had she would have structured her leave differently to prevent losing her job. Ross claims that after she informed YCS on her leave request form that the length of her absence was unknown, and then followed this up with a doctor's note stating she required leave until April, YCS never gave her notice that the proposed April date exceeded the available 12 weeks' leave.

YCS counters that it did provide proper FMLA notice to Ross in a packet that included forms that she signed and acknowledged. In the packet was information about the FMLA and that up to 12 weeks leave was available under the law. Even if it did not provide proper notice, YCS points out that Ross must show that such failure prejudiced her. It contends that Ross cannot show prejudice because she herself stated she was unable to return to work after 12 weeks of leave. By her own admission, Ross was unable to work after the first hip surgery, so YCS argues that she could not have structured her leave differently or intermittently.

To establish an FMLA interference claim, Ross must demonstrate the following five elements:

> (1) she was an eligible employee under the FMLA;
> (2) YCS was an employer subject to the requirements of the FMLA;
> (3) she was entitled to leave under the FMLA;
> (4) she gave notice to YCS of her intention to take FMLA leave; and
> (5) YCS denied her the benefits to which she was entitled under the FMLA.

*Parker v. Hahnemann Univ. Hosp.*, 234 F.Supp.2d 478, 484 (D.N.J. 2002).

There is no question about the first four elements, so the Court's inquiry turns on whether YCS denied Ross benefits to which she was entitled by failing to provide notice as required by the FMLA, and if so, whether that failure caused prejudice.

The record shows that on October 9, 2012, YCS Benefits Manager Sydney Williams sent Ross a packet containing "Family/Medical Leave Request Form" and a "Leave Designation/Employee Acknowledgment of Obligations Form." (Ross Statement of Material Facts ¶ 20; YCS Statement of Material Facts ¶ 14.)

The Court finds that the eligibility notice was satisfied here. The two forms clearly explained what FMLA leave is and informed Ross that she was eligible for it. What they did *not* do is satisfy the individualized notice required in the rights and responsibilities and designation notices. FMLA regulations require an employer to send a designation notice within five days of learning the employee will take leave. The document titled "Leave Designation/Employee Acknowledgment of Obligations Form" that YCS sent Ross stated that Ross was eligible for FMLA leave and that the leave would be counted as FMLA. (D.E. 39-5 Ross Ex. N.) The form also stated generally that the FMLA provides up to 12 weeks of unpaid leave. (*Id.*) But it did not specifically state that Ross was eligible for the full 12 weeks and it did not identify the 12-month period in which the leave was calculated. (*Id.*) The burden of calculating the time is on the employer, not the employee. *See* C.F.R. § 825.300(c)(1), (c)(1)(i) ("Such specific notice must include, as appropriate . . . the applicable 12-month period for FMLA entitlement.")

The regulations require an employer to provide "the number of hours, days, or weeks" that will be taken as FMLA leave. C.F.R. § 825.300(d)(6). When YCS gave Ross her designation notice, neither party knew the anticipated end date of her FMLA leave and it was impossible at that point for YCS to provide "the number of hours, days, or weeks" of leave. But a couple of weeks later, Ross's physician sent YCS a note stating that she was unable to work, that two hip surgeries were scheduled, and that she would not be able to return to work for approximately six months, which well exceeded the 12 weeks available to Ross.

As to this, YCS argues that the "regulations make clear that the employer must notify the employee of the number of hours, days, or weeks that will be counted against the employee's FMLA leave entitlement in the designation notice **only** 'if the amount of leave needed is known at the time the employer designates the leave as FMLA-qualifying'" (D.E. 44 ("YCS Reply Brief") at 7.)  That is obvious; it would be impossible to require an employer to calculate against an unknown date.  But the FMLA requires employers, in the event of change in the designation notice, to provide "within five business days of receipt of the employee's first notice of need for leave subsequent to any change, written notice of the change."  C.F.R. § 825.300(d)(2).  The note sent by Ross's physician was a change in status and it gave YCS enough information to know Ross would exhaust her 12 weeks' leave before her anticipated return date.  Yet YCS never contacted Ross.

The regulations do account for situations when an end date is unknown, such as in "the case of unforeseeable intermittent leave."  C.F.R. § 825.300(d)(6).  But in that case the employer must provide information about the amount of leave counted against the employee's entitlement upon request of the employee.  Here, the requested leave was continuous, not intermittent, and YCS was aware of the length of absence Ross needed soon after her initial request for leave.  YCS's silence when it learned that the requested leave exhausted available leave failed to comport with the letter and spirit of the law.  YCS did not tell Ross what specific amount of time was available to her, it did not provide the change in designation notice after receiving the doctor's note, and it did not communicate the critical information that the FMLA would not provide all the requested leave.

Intuitively, there will frequently be instances of leave with an unknown end date. Under those circumstances, the regulations cannot reasonably be interpreted as excusing an employer

9

from its core obligation to inform the employee about used FMLA time.  The regulations must be read as a whole, keeping in mind that they "require employers to provide individualized notice of their FMLA rights and obligations."  *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F. 3d 364 135, 142 (3d Cir. 2004).  Under the FMLA, the employer must send a designation notice within five days of knowing that an employee will take leave.

      YCS's reading of C.F.R. § 825.300 (d)(6) builds an arbitrariness into the process.  According to the record, YCS sent Ross all the paperwork in one packet.  YCS's interpretation of notice would mean that if the doctor's note came within the next five days, YCS *would not be* obligated to provide the information about calculated leave**.**  But if it staggered the paperwork and waited to send Ross the designation notice after sending her the initial request form, and the doctor's note arrived in the interim, then YCS *would be* obligated to provide the information.  This defeats the objective of "individualized" – hence, effective – notice.

> The overall intent of the FMLA is lost when an employer fails to provide an employee with the opportunity to make informed decisions about her leave options and limitations. Without such an opportunity, the employee has not received the statutory benefit of taking necessary leave with the reassurance that her employment, under proscribed conditions, will be waiting for her when she is able to return to work.

*Id*.

YCS maintained a silence about the impact of Ross's requested leave period, which, under the FMLA, constituted a failure adequately to inform her of her leave and to communicate, once it was aware of the proposed April return date, the altered consequences of the leave designation.

      The inquiry does not end there.  The Court must determine whether, as a result of defendant's violations, Ross suffered prejudice.  *Conoshenti*, 364 F. 3d at 144 (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89-90 (2002)).  In *Conoshenti*, the plaintiff was

injured by a car and out for a period of time. *Id.* at 138. He was never informed of his FMLA rights and was terminated when he returned to work. *Id.* at 139. The Third Circuit held that notice was required for the plaintiff to "have been able to make an informed decision about structuring his leave" and had he received the notice, he "would have structured it, and his plan of recovery, in such a way as to preserve the job protection afforded by the Act." *Id.* at 142–143. Similarly, Ross argues that if she had been informed that her April end date exceeded her FMLA leave and that she would be terminated if she did not return to work in December, she would have structured her surgeries differently and postponed her second hip surgery.

YCS points out that Ross used her full 12 weeks of leave (during which she had her first hip surgery) and could not return to work and so even if she had been informed she would not have been able to return. YCS adds that she used the full benefit to which she was entitled. It points to *Thurston v. Cherry Hill Triplex*, 941 F. Supp. 2d 520 (2008), as instructive. In *Thurston*, the plaintiff tore her Achilles tendon and her doctor told her she required approximately 12 weeks' leave, which the employer granted. *Id.* at 523. After granting the leave, the employer mailed the plaintiff a Department of Labor Designation Notice that stated the time off was unknown and required the employee to furnish bi-weekly reports on her condition and the anticipated end date. *Id.* The plaintiff exceeded the 12 weeks' leave and was terminated. *Id.* at 524. She testified in her deposition that she did not understand that she was entitled to a maximum of 12 weeks, and that the company told her to take as much time as she needed when she informed them her leave would exceed the 12-week period. *Id.* at 524. The district court found that the individualized notice Thurston was provided was sufficient as a matter of law because she was fully aware that the FMLA provided a **maximum** of 12 weeks of leave. *Id.* at 526 (emphasis added).

*Thurston* is distinguishable. First, the defendant-employer used a Department of Labor preprinted form. *Id.* at 523. Here, YCS used its own forms. Second, Thurston was aware that she was entitled only to 12 weeks' FMLA leave as evidenced by her own statement to her supervisor that she would be exceeding the 12-week period. *Id.* at 524. The central dispute was her contention that her supervisor told her to take all the time she needed. *Id.* By contrast, Ross and YCS were never in contact during Ross's leave. YCS did not give Ross an end date to her FMLA leave (until after the leave exhausted), or inform her of how many days she had used, or tell her that her anticipated return date exceeded her available leave.

Ross had her first hip surgery in late November. YCS received Ross's doctor's note, dated October 19, 2012, by October 26th at the latest. Had YCS updated the designation form, or even called Ross, and given her a definitive calculation of leave with the newly acquired end date, she would have been fully aware of her options. "The overall intent of the FMLA is lost when an employer fails to provide an employee with the opportunity to make informed decisions about her leave options and limitations." *Conoshenti*, 364 F. 3d at 142. The Third Circuit has held that a viable theory of recovery under the FMLA exists when an employee is not able to "make an informed decision about structuring his leave and would have structured it, and [his/her] plan of recovery, in such a way as to preserve the job protection afforded by the Act." *Id.* at 142-43. YCS failed to fully inform Ross of her FMLA rights when it was in possession of all necessary information to do so. Ross suffered prejudice because she did not have the opportunity to structure her leave differently and save her job. As such, Ross is entitled to summary judgment in her favor on count 1.

### B. LAD (count two)

As to count 2, the LAD claim, the Court grants summary judgment in favor of YCS.

The LAD prevents employers from discriminating on the basis of disability in employment decisions, such as hiring firing, assignment, and promotion. *N.J.S.A.* § 13:13-2.5(a). But it also goes further. Similar to the Americans with Disabilities Act (ADA), 42 U.S.C.A. §§ 12101 to 12213, the LAD requires an employer to make reasonable accommodations for an employee who is disabled, so long as such accommodations do not "impose an undue hardship" on the employer. *N.J.S.A.* § 13:13-2.5(b). Notably, the disability accommodation provisions of the LAD are modeled after the ADA, and New Jersey has historically sought to unify its state laws with federal disability protections. *See Victor v. State*, 203 N.J. 383, 40-01 (2010).

Ross alleges in her amended complaint that YCS failed to accommodate her disability and engage in the "interactive process" of employee accommodation. (Am. Compl. ¶¶ 35 - 42.) That allegation, even if true, skips the threshold requirement that the employer must know about an accommodation that is needed. "The reasonable accommodation process begins with a request by the employee for an accommodation that will allow him or her to perform the essential functions of the job. The employer is then prompted to 'initiate an informal interactive process with the employee' in which each has a duty to act in good faith." *A.D.P. v. ExxonMobil Research and Engineering Co.*, 428 N.J. Super. 518, 543-44 (App. Div. 2012) (quoting *Tynan v. Vicinage 13 of the Sup.Ct. of N.J.*, 351 N.J. Super. 385, 400 (App. Div. 2002)).

There is nothing in this record to support a claim that Ross ever requested an accommodation from YCS to continue working before or after her hip surgery. Although requests for accommodations do not need to "be in writing" or even use the words "reasonable accommodation," the employee still has the initial burden of informing the employer about the need for assistance because of a physical disability. *Tynan*, 351 N.J. Super. at 400 ("While there

are no magic words to seek an accommodation, the employee, however, 'must make clear that . . . assistance [is desired] for his or her disability.'" (quoting *Jones v. United Parcel Service*, 214 F.3d 402, 408 (3d Cir.2000))). Ross neither formally requested an accommodation nor provided enough information to obligate YCS to engage in the interactive process.

> To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith.
>
> *Id.* at 400-01.

Ross argues that YCS knew she had a disability because it received her FMLA request form. (D.E. 43 at 22). A request for FMLA leave does not automatically mean that an employee is disabled -- there are many reasons an employee may exercise her leave. And that argument overlooks the requirement that the employee must ask for an accommodation. Ross is conflating two statutes that are distinct from one another and are triggered differently. Significantly, she does not provide a single case that stands for the proposition that a request for FMLA leave triggers an employer's duty to engage in the LAD interactive process about disability accommodation.

Further, Ross's limited interactions with YCS during her leave suggest she was unable to work *at all*. When Williams contacted her in late December Ross stated that she was unable to return until April, something she confirmed in her deposition. Ross's FMLA claim is that she did not return to work because she was physically unable, and her physical condition was related to her being denied an opportunity to structure her leave in the way best suited to protect her job. Her LAD position that she was terminated because YCS did not provide her an accommodation contradicts Ross's FMLA assertions and arguments. Ross had the duty of requesting the

accommodation and she did not; she also represented to YCS that she was unable to work, never raising the possibility of an accommodation.  The Court grants summary judgment in favor of YCS on the LAD claim.

### V.     Conclusion

For the reasons stated above, the Court finds that YCS interfered with Ross's FMLA rights, and grants summary judgment in her favor as to count 1.  YCS's summary judgment as to count 2 is granted.  The parties are directed to Magistrate Judge Waldor for further directions concerning appropriate damages.

An appropriate order will follow.

s/ Katharine S. Hayden<br>
Katharine S. Hayden, U.S.D.J.

Dated:  December 29, 2016